# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

---

LYNN MELCHER, individually and on
behalf of other similarly situated individuals,

    Plaintiff,

v.

    Case No.: 0:17-cv-00420-DSD-LIB

STARKEY LABORATORIES, INC., d/b/a
STARKEY HEARING TECHNOLOGIES,

    Defendant.

---

## SETTLEMENT AGREEMENT AND RELEASE

---

    This Settlement Agreement and Release ("Agreement") is entered into by Plaintiff Lynn Melcher, individually and on behalf of all members of the FLSA Conditional Collective and potential members of the Fed. R. Civ. P. 23 Settlement Class (together, "Plaintiffs"), and Starkey Laboratories, Inc., d/b/a Starkey Hearing Technologies ("Defendant"). Plaintiffs and Defendant may be referred to collectively as the "Parties."

    WHEREAS, Defendant is a comprehensive hearing solutions company that manufactures and sells hearing aids and related products;

    WHEREAS, Plaintiffs worked for Defendant during the time period of February 8, 2014, to November 25, 2016, as (1) Territory Sales Representatives or previously used job titles, including the titles of Territory Account Manager or Sales Executive, encompassed by Defendant's numerical job code designation 339, (2) Battery Sales Representatives or previously used job titles encompassed by Defendant's numerical job code designation 1025, or (3) Associate Sales Representatives or previously used job titles encompassed by Defendant's numerical job code designation 842 (such positions are all referred to collectively as "Territory Sales Representatives");

    WHEREAS, on or about February 8, 2017, Plaintiff Lynn Melcher brought this case on behalf of herself and other Territory Sales Representatives with similar job titles and/or duties ("the Lawsuit"), alleging violations of the Fair Labor Standards Act ("FLSA") and Minnesota Fair Labor Standards Act ("MFLSA");

1

WHEREAS, Plaintiffs claim that, prior to December 2016, Defendant allegedly violated the FLSA and MFLSA by failing to pay an overtime premium allegedly required under the FLSA and MFLSA to Plaintiffs;

WHEREAS, for a number of reasons, allegedly including an impending Department of Labor rule change and an anticipated change in the way the Territory Sales Representative position would likely evolve in the future, Defendant reclassified Territory Sales Representatives, Battery Sales Representatives, and Associate Sales Representatives from exempt to non-exempt employees for overtime compensation purposes, effective November 26, 2016, prior to commencement of this Lawsuit;

WHEREAS, the parties stipulated to conditional certification of the FLSA collective action on June 9, 2017, the Court granted conditional certification and authorized notice on June 14, 2017, and notice was disbursed pursuant to the Court's June 14, 2017 order;

WHEREAS, in addition to Plaintiff Melcher, twenty (20) individuals joined the action, satisfied the Conditional FLSA Collective definition in the Court's June 14, 2017 order or were permitted to join the Lawsuit by Defendant's consent, and remained in this action as Collective Members;

WHEREAS, bona-fide disputes exist between Plaintiffs and Defendant concerning claims for payment of overtime wages, the applicability of multiple exemptions (including the administrative exemption, the "combination" exemption, the exemption for highly compensated employees, and the outside sales exemption), hours worked, the applicability of the fluctuating work week method to determine the magnitude of any overtime premium, the amount of alleged overtime wages, the scope of the applicable statute of limitations, liquidated damages, and other sums allegedly due under the FLSA and MFLSA;

WHEREAS, Defendant denies the allegations in Plaintiffs' complaint, and denies that class or collective treatment is appropriate under the circumstances, but wishes to settle this Lawsuit to avoid the expense, diversion, and annoyance of litigation;

WHEREAS, the Parties now desire to compromise, settle, forever resolve, and finally dispose of the claims asserted without further dispute, litigation, or other legal proceedings; and

WHEREAS, the Parties attended a full-day mediation on March 27, 2018 whereby they negotiated, and subsequently entered into, a memorandum of understanding ("MOU") including material terms for resolution of this Lawsuit, which the parties finally memorialized on April 23, 2018.  A copy of this MOU is attached hereto as <u>Exhibit A</u>.

NOW, THEREFORE, in consideration of the foregoing, and the promises and other consideration contained hereinafter, the Parties agree as follows:

## 1. DEFINITIONS

**1.1  Agreement.** "Agreement" means this Settlement Agreement and Release, including all Exhibits referred to herein and attached hereto.

**1.2  Allocation.** "Allocation" means the amount of money representing the portion of the Maximum Settlement Amount payable to a Collective Member or Putative Class Member at various times as identified herein and as set forth in either the Preliminary Allocation, the Post Final Approval Allocation, or the Unclaimed Funds Allocation (if any).

**1.3  Check-Cashing Deadline.** "Check-Cashing Deadline" means the date ninety (90) days after the date that Defendant delivers the Initial Settlement Checks to Plaintiffs' counsel.

**1.4  Class Settlement Notice.** "Class Settlement Notice" refers to the document to be disbursed to Putative Class Members, the proposed version of which is attached hereto as Exhibit E.

**1.5  Collective Members.** "Collective Members" means Plaintiff Lynn Melcher and those twenty opt-in plaintiffs who (1) either satisfy the Conditional FLSA Collective definition provided in the Court's June 14, 2017 Order (ECF No. 44) or whose joinder for settlement purposes was permitted by the Defendant's consent, (2) filed a Notice of Consent to join this Lawsuit with the Court, and (3) have not otherwise withdrawn from this Lawsuit. A complete list of Collective Members is attached to this agreement as Exhibit B. This definition does not include Mark Turner or Joseph Meyers, who are addressed separately in Section 4.9.a below.

**1.6  Defendant.** "Defendant" means defendant Starkey Laboratories, Inc., d/b/a Starkey Hearing Technologies.

**1.7  Initial Settlement Checks.** "Initial Settlement Checks" means the settlement checks issued by Defendant to Settling Plaintiffs and Settlement Class Members pursuant to Section 4.8 below, representing the amounts allocated to each Settling Plaintiff and Settlement Class Member in the Post Final Approval Allocation.

**1.8  Lawsuit.** "Lawsuit" means the above-captioned action entitled *Lynn Melcher, et al. v. Starkey Laboratories, Inc. d/b/a Starkey Hearing Technologies*, Case No. 0:17-cv-00420-DSD-LIB, currently pending in the United States District Court for the District of Minnesota.

**1.9  Maximum Settlement Amount**.  "Maximum Settlement Amount" means the total maximum amount of funds that Defendant will provide to settle all claims of the Plaintiffs, including payments to Settling Plaintiffs and Settlement Class Members, Service Payments, Plaintiffs' attorneys' fees, costs, and expenses, Unclaimed Funds, and amounts that Defendant is entitled to retain pursuant to Section 3.6, and as further described in Section 3.1 below.

**1.10  Non-Responding Plaintiffs**.  "Non-Responding Plaintiffs" refers to those Collective Members who do not timely sign and return the Notice of Settlement and Release by the Notice Response Deadline, and therefore do not become Settling Plaintiffs, but who also do not affirmatively reject or opt-out of the settlement contemplated by this Agreement.  Non-Responding Plaintiffs are not the same as Rejecting Plaintiffs.  After the Notice Response Deadline, Non-Responding Plaintiffs are treated as, and will be provided an Allocation consistent with the method used to determine Allocations provided to, Settlement Class Members.

**1.11  Notice of Settlement and Release**.  "Notice of Settlement and Release" refers to the document to be disbursed to Collective Members, the proposed version of which is attached hereto as Exhibit D.  Collective Members must sign and return their Notice of Settlement and Release by the Notice Response Deadline to become Settling Plaintiffs.

**1.12  Notice Response Deadline**.  "Notice Response Deadline" means the date forty-five (45) days from the earlier of the date Plaintiffs' counsel mails or emails the Notice of Settlement and Release to each Collective Member and the Class Settlement Notice to each Putative Class Member.

**1.13  Opt-Out Class Members**. "Opt-Out Class Members" means those Putative Class Members who wish to be excluded from the settlement contemplated by this Agreement and who therefore timely complete and return an Opt-Out Request.

**1.14  Opt-Out Request**.  "Opt-Out Request" refers to the form, described in the Class Settlement Notice, that must be completed by an Opt-Out Class Member requesting to be excluded from the Settlement.

**1.15  Plaintiffs**.  "Plaintiffs" means the Named Plaintiff Lynn Melcher, the Collective Members listed on Exhibit B, and the Putative Class Members listed on Exhibit C.

**1.16  Post Final Approval Allocation**.  "Post Final Approval Allocation" means the settlement funds allocation schedule calculated by Plaintiffs' counsel following the Notice Response Deadline, which will set forth the amount of money representing the portion of the Maximum Settlement Amount allocated to each Collective Member or Settlement Class Member after adjusting the Preliminary Allocation to account for those

funds (i) that Defendant is entitled to retain, if any, and (ii) that would have been payable to Opt-Out Settlement Class Members under the Preliminary Allocation, if any. The Post Final Approval Allocation will also set forth the amount of money representing the portion of the Maximum Settlement Amount allocated for Plaintiffs' attorneys' fees and costs and Service Payments.

1.17    **Preliminary Allocation**.  "Preliminary Allocation" means the settlement funds allocation schedule attached hereto as Exhibit F, which sets forth the amount of money representing the portion of the Maximum Settlement Amount initially allocated to each Collective Member and Putative Class Member as calculated by the Plaintiffs' counsel. The total amount allocated to each respective Collective Member or Putative Class Member in the Preliminary Allocation will be identified in the Notice of Settlement and Release or Class Settlement Notice directed to that particular Collective Member or Putative Class Member. The Preliminary Allocation also sets forth the amount of money representing the portion of the Maximum Settlement Amount allocated for Plaintiffs' attorneys' fees and costs and Service Payments.

1.18    **Putative Class Members**.  "Putative Class Members" refer to those individuals who (1) satisfy the MFLSA Rule 23 Class definition included in Section 2 below, (2) are identified in Exhibit C, and (3) are not also Collective Members.

1.19    **Rejecting Plaintiffs**.  "Rejecting Plaintiffs" means those Collective Members who affirmatively inform Plaintiffs' counsel in writing, prior to the Notice Response Deadline, that they do not wish to participate in the settlement contemplated by this Agreement.  Rejecting Plaintiffs are not Non-Responding Plaintiffs.

1.20    **Service Payments**.  "Service Payments" means those portions of the Maximum Settlement Amount allocated to Plaintiff Melcher and the Plaintiffs listed in Section 3.2.a below in recognition of their active participation during the course of this Lawsuit.

1.21    **Settlement Class Members**.  "Settlement Class Members" refers to (1) Putative Class Members, (2) who are not Settling Plaintiffs, (3) who are not Opt-Out Class Members, and (4) who are not Rejecting Plaintiffs.  After the Notice Response Deadline, Non-Responding Plaintiffs are treated as Settlement Class Members.

1.22    **Settling Plaintiffs**. "Settling Plaintiffs" refers to those Collective Members who have signed and returned a Notice of Settlement and Release by the Notice Response Deadline. Settling Plaintiffs do not include Rejecting Plaintiffs or Non-Responding Plaintiffs.

1.23    **Spread**.  "Spread" refers to the difference between (1) the original dollar amount allocated in the Preliminary Allocation to any Collective Member who later becomes a Non-Responding Plaintiff, and (2) the dollar amount subsequently allocated in

5

the Post Final Approval Allocation to the same Non-Responding Plaintiff as a Settlement Class Member.

**1.24 Unclaimed Funds**. "Unclaimed Funds" refers to both: (i) the dollar amount of any uncashed Initial Settlement Checks after the Check-Cashing Deadline has expired; and (ii) the dollar amount of the Spread for Non-Responding Plaintiffs who otherwise cash their reduced-allocation Initial Settlement Check; but does not refer to any funds that Defendant is entitled to retain pursuant to Section 3.6 below.

**1.25 Unclaimed Funds Allocation**. "Unclaimed Funds Allocation" means the settlement funds allocation schedule calculated by Plaintiffs' counsel following the Check-Cashing Deadline, which will set forth the amount of money to be allocated and distributable to each Settling Plaintiff or Settlement Class Member, if and after it is determined that the amount of Unclaimed Funds exceeds the sum of Seven Thousand Five Hundred Dollars ($7,500.00) and in accordance with Section 3.5.b of this Agreement.

**1.26 Unclaimed Funds Checks**. "Unclaimed Funds Checks" means the settlement checks issued by Defendant to Settling Plaintiffs and Settlement Class Members who cashed their Initial Settlement Checks pursuant to Section 3.5.b below, representing the amounts allocated to such Settling Plaintiffs and Settlement Class Members in the Unclaimed Funds Allocation.

**2.    CLASS CERTIFICATION**

**Stipulation to Class Certification**.  For settlement purposes only, the Parties stipulate and agree to certification of the following MFLSA Rule 23 Class:

> All persons who, at any time from February 8, 2014, through November 30, 2016, were employed by Defendant in the position of either (i) Territory Sales Representative or a job title for such position previously used by Defendant (including Territory Account Manager or Sales Executive) who were employed by Defendant in its numerical job code designation 339, or (ii) Battery Sales Representative or a job title for such position previously used by Defendant who were employed by Defendant in its numerical job code designation 1025, or (iii) Associate Sales Representative or a job title for such position previously used by Defendant who were employed by Defendant in its numerical job code designation 842.

Plaintiffs will seek class certification from the Court accordingly.

**3.    MONETARY TERMS**

**3.1    Maximum Settlement Amount**.  The Maximum Settlement Amount Defendant will provide to settle all claims of the Plaintiffs is Seven Hundred Fifty-

6

Thousand Dollars and Zero Cents (**$750,000.00**). The Maximum Settlement Amount includes the following payments: (a) Allocations made to Settling Plaintiffs, (b) Allocations made to Settlement Class Members, (c) Service Payments, (d) Plaintiffs' attorneys' fees, costs, and expenses, and (e) those funds Defendant is entitled to retain pursuant to Section 3.6 below. The Maximum Settlement Amount does not include the payment of any employer-side payroll taxes, which Defendant shall separately be responsible for paying as further explained in Section 3.7 below.

**3.2    Preliminary Allocation of the Maximum Settlement Amount**. Attached hereto as Exhibit F is the Preliminary Allocation of the Maximum Settlement Amount (as determined by Plaintiffs' counsel), which is comprised of the following:

**3.2.a  Service Payments**. A total of $13,000 of the Maximum Settlement Amount will be allocated to provide Service Payments to Plaintiff Melcher and to those Plaintiffs who were deposed in this Lawsuit. Plaintiff Melcher shall receive a $5,000 Service Payment, and the following Collective Members shall each receive a $1,000 Service Payment so long as they become Settling Plaintiffs: Jaime Beck, Alison Davison, Erin Gerenev, Paul Hinz, Niki Johnston, Adam Miller, Jenifer Schaefer, and John Yuccas. Defendant will not oppose Plaintiffs' request for these Service Payments, and the Service Payments shall be reported on an IRS Form 1099 as "Other Income."

**3.2.b  Attorneys' Fees and Costs**. Plaintiffs' counsel will seek an order from the Court awarding attorneys' fees of no more than one third of the Maximum Settlement Amount, as well as reimbursement for costs and expenses incurred in litigation. These amounts are calculated in the Preliminary Allocation as $250,000.00 and $15,405.62 respectively.

**3.2.c  Collective Member and Class Member Allocations**. The portion of the Maximum Settlement Amount that is not allocated to provide Service Payments or to reimburse Plaintiffs' counsel for attorneys' fees and costs is allocated among the Collective Members and Putative Class Members in the attached Preliminary Allocation. This amount equals $471,594.38.

**3.3    Post Final Approval Allocation**. Within thirty (30) days after the Notice Response Deadline, and in connection with the filing of the Final Motion for Settlement Approval, Plaintiffs' counsel will calculate and produce a Post Final Approval Allocation, which will adjust the Preliminary Allocation to reallocate among the Settling Plaintiffs and Settlement Class Members any portion(s) of the Maximum Settlement Amount that were allocated to Opt-Out Class Members in the Preliminary Allocation. Subject to final settlement approval by the Court, the Initial Settlement Checks disbursed

by Defendant pursuant to Section 4.8 below shall represent the Allocations set forth in the Post Final Approval Allocation.

**3.4** **Reallocation or Retention of Spread**. The Spread related to Non-Responding Plaintiffs will not be reallocated to the Settling Plaintiffs or Settlement Class Members in the Post Final Approval Allocation. If any Non-Responding Plaintiff participates in the settlement as a Settlement Class Member and cashes the Initial Settlement Check issued to them pursuant to Section 4.8 below, the Spread relating to such Non-Responding Plaintiff shall be considered Unclaimed Funds and subject to reallocation in the Unclaimed Funds Allocation. If Non-Responding Plaintiffs who become Settlement Class Members fail to timely cash their Initial Settlement Checks and thereby fail to effectively release their federal and state wage claims, the Spread and the remainder of such Non-Responding Plaintiffs' Allocation will be retained by Defendant.

**3.5** **Unclaimed Funds**.

**3.5.a** After the Check-Cashing Deadline, in the event that total Unclaimed Funds are less than $7,500, the funds shall be donated to the National Employment Law Center as *cy pres*. Defendant shall make this payment within three (3) months of the Check-Cashing Deadline and shall copy Plaintiffs' counsel on the correspondence. Defendant shall identify the payment as being made on behalf of the Parties in this matter.

**3.5.b** In the event that total Unclaimed Funds are greater than or equal to $7,500, the Unclaimed Funds shall be reallocated on a pro rata basis among the Settling Plaintiffs and Settlement Class Members who cashed their Initial Settlement Checks prior to the Check-Cashing Deadline. Plaintiffs' counsel will supply Defendant with an Unclaimed Funds Allocation within thirty (30) days after the Check-Cashing Deadline. Defendant will issue Unclaimed Funds Checks to such Settling Plaintiffs and Settlement Class Members within three (3) months of the Check-Cashing Deadline. The recipients shall have ninety (90) days from the date that Defendant delivers the Unclaimed Funds Checks to Plaintiffs' counsel to cash the Unclaimed Funds Checks. All funds represented by Unclaimed Funds Checks that remain uncashed after such 90-day period shall be payable to the National Employment Law Project pursuant to the instructions in Section 3.5.a above.

**3.6** **Retention by Defendant of Certain Settlement Funds Allocated to Rejecting and Non-Responding Plaintiffs**. Rejecting Plaintiffs and Non-Responding Plaintiffs who do not accept the settlement consideration do not release their federal and state wage claims pursuant to Section 5 of this Agreement. In such event, Defendant is entitled to retain the portion of the Maximum Settlement Amount allocated to these Collective Members who choose not to participate in the settlement. Specifically:

**3.6.a** Defendant shall retain that portion of the Maximum Settlement Amount that is allocated to Rejecting Plaintiffs in the Preliminary Allocation. These funds will not be reallocated to Settling Plaintiffs or Settlement Class Members.

**3.6.b** Subject to Section 3.4 above, Defendant shall retain the Spread relating to Non-Responding Plaintiffs who become Settlement Class Members.

**3.6.c** Defendant shall retain the dollar amount of the reduced-allocation Initial Settlement Check disbursed to any Non-Responding Plaintiff if such Non-Responding Plaintiff does not cash the Initial Settlement Check provided to them as a Settlement Class Member.

**3.7** **Tax Treatment of the Settlement**. For each Settling Plaintiff and Settlement Class Member, Defendant will issue a W-2 for half of their Post Final Approval Allocation amount and report the other half of the Post Final Approval Allocation amount on an IRS Form 1099 as "other income." Defendant will report attorneys' fees and costs separately on an IRS Form 1099 to Plaintiffs' counsel. Defendant will be responsible for its share of employer-side payroll taxes relating to the wage portion of the settlement. In the event there is an Unclaimed Funds Allocation and Unclaimed Funds Checks are disbursed and cashed, Defendant will report half of such amounts on a Form W-2 and half on an IRS Form 1099 as "other income." Plaintiffs acknowledge and agree that the payments contemplated by this Agreement may result in taxable income to them under applicable federal and state tax laws, and that they are solely responsible for the reporting and payment of any federal, state, or local income or employment tax on any payments received under this Agreement. Defendant has made no representation as to the taxability of any portions of the payments made under this Agreement. Plaintiffs agree that they are solely responsible for any and all taxes and that they will not seek indemnification from Defendant for any tax liability Plaintiffs may have in connection with this Agreement.

**3.8** **No Other Withholdings or Deductions**. Except as set forth in Section 3.7, the checks representing settlement payments shall include no other deductions or withholdings for retirement or 401(k) plans, insurance payments, or any other fringe benefits or contributions, and Plaintiffs waive any right to any claim that Defendant has any obligation to make any such payments, or that Defendant has any obligation to make any matching payments or contributions, with respect to the payments made under this Agreement.

**4.     SETTLEMENT APPROVAL, NOTICE, AND DISBURSEMENT OF SETTLEMENT FUNDS**

**4.1     Motion for Preliminary Settlement Approval**.  Soon after the execution of this Agreement, and consistent with Section 6.3, Plaintiffs will request a hearing date and file the motion papers in connection with the Motion for Preliminary Settlement Approval and Class Certification for Settlement Purposes.  The Motion shall seek (1) certification of the putative class for settlement purposes, (2) preliminary approval of the settlement as fair and reasonable, (3) approval of the Notice of Settlement and Release and the Class Settlement Notice attached hereto as Exhibits D and E, respectively, and (4) deadlines for the filing of the Motion for Final Settlement Approval and Fairness Hearing Date.

**4.2     Disbursement of Settlement Notices**.

**4.2.a**  Within three (3) business days of the Court's granting preliminary settlement approval, Defendant will provide Plaintiffs' counsel with the names, present or last-known addresses, email addresses, and last four digits of social security numbers (if known) of the Putative Class Members.

**4.2.b**  Within seven (7) days of the Court's granting preliminary settlement approval, Plaintiffs' counsel shall mail the Notice of Settlement and Release to the Collective Members and the Class Settlement Notice to the Putative Class Members at their last-known addresses.  The notices will also be delivered via email.

**4.2.c**  Defendant will cooperate with Plaintiffs' counsel to ensure that the Notice of Settlement and Release and Class Settlement Notice are promptly provided to all Collective Members and Putative Class Members.

**4.2.d**  Within ten (10) business days after the Notice Response Deadline, Plaintiffs' counsel shall disclose to Defendant's counsel all returned and executed Notice of Settlement and Release forms.

**4.3     Non-Discouragement**.  Defendant's management (supervisor level and above) will not discourage participation in the settlement by the Collective Members or Putative Class Members.  Further, Defendant's management (supervisor level and above) will not have any communication regarding the Lawsuit or this Agreement with Collective Members until after the Check-Cashing Deadline expires.

**4.4     Collective Members' Responses**.  Following the Notice Response Deadline, Collective Members will be placed in one of three categories:

**4.4.a Settling Plaintiffs**. Collective Members who timely sign and return to Plaintiffs' counsel the Notice of Settlement and Release by the Notice Response Deadline shall become Settling Plaintiffs, shall receive an Initial Settlement Check in the amount of the Allocation made to them in the Preliminary Allocation, and shall be bound by the terms of this Agreement that relate to Settling Plaintiffs and any Court order finally approving the settlement contemplated hereby.

**4.4.b Rejecting Plaintiffs**. Rejecting Plaintiffs shall inform Plaintiffs' counsel in writing before the end of the Notice Response Deadline of their intent not to become Settling Plaintiffs, and Plaintiffs' counsel will notify Defendant of any such Rejecting Plaintiff's wish to be excluded by providing copies of their written rejection(s) within three (3) business days of receipt. Rejecting Plaintiffs will be dismissed without prejudice from the Lawsuit with their claims tolled for thirty (30) days following dismissal.

**4.4.c Non-Responding Plaintiffs**. Any Collective Members who do not sign the Notice of Settlement and Release by the Notice Response Deadline, but who also do not affirmatively reject the Agreement, shall be considered Non-Responding Plaintiffs. Non-Responding Plaintiffs will not become Settling Plaintiffs and will instead be treated as, and receive an Allocation consistent with the method used to determine Allocations provided to, Settlement Class Members. Such Non-Responding Plaintiffs will receive an Initial Settlement Check in the amount of the Allocation made to them in the Post Final Approval Allocation and shall be bound by the terms of this Agreement that relate to Settlement Class Members, including releases of their federal and state wage claims, and any Court order finally approving the settlement contemplated hereby.

**4.5  Class Objections to Settlement**. Any of the Putative Class Members who wish to object to the settlement contemplated by this Agreement must file a written objection with the Court, with copies to Plaintiffs' counsel and counsel for Defendant. All objections must be dated and post-marked by no later than the Notice Response Deadline. The objection must set forth, in clear and concise terms, the legal and factual arguments supporting the objection.

**4.6  Class Opt-Out Procedures**. Putative Class Members who wish to be excluded from the settlement must complete and deliver an Opt-Out Request to Plaintiffs' counsel no later than the Notice Response Deadline. Plaintiffs' counsel shall provide copies of any Opt-Out Requests to Defendant's counsel within three (3) business days of receipt by Plaintiffs' counsel. Opt-Out Class Members shall receive no settlement benefits under this Agreement, shall not be considered Settlement Class Members, and shall not be bound by any release set forth in or contemplated by this Agreement or the

Settlement Class Notice. The Minnesota Fair Labor Standards Act (MFLSA) claims of any Opt-Out Class Members will be dismissed without prejudice and the statute of limitations with respect to such MFLSA claim(s) will be tolled for thirty (30) days from the date of the Court's final approval of the settlement contemplated by this Agreement. Nothing in this Agreement should be construed to reflect that any claims of Settlement Class Members or Opt-Out Class Members under the Fair Labor Standards Act (FLSA) are tolled for statute of limitations purposes.

**4.7  Motion for Final Approval of the Settlement**. Within thirty (30) days of the end of the Notice Response Deadline, the Parties will file a Motion for Final Approval of Settlement, provided Defendant does not exercise its option to rescind the settlement as described herein in Section 7. The Motion for Final Approval of Settlement will request that the Court finally approve this Agreement as fair and reasonable. At the time of filing such motion, Plaintiffs' counsel will also provide Defendant with a Post Final Approval Allocation as described in Section 3.3 herein.

**4.8  Settlement Disbursement**. Following the Court's granting final approval of the settlement contemplated by this Agreement, Defendant shall deliver to Plaintiffs' counsel Initial Settlement Checks for each Settling Plaintiff and Settlement Class Member, and shall wire Plaintiffs' counsel the attorneys' fees and costs ordered by the Court, in the next regular payroll cycle after notice of the Court's granting such approval. Plaintiffs' counsel shall promptly send the Initial Settlement Checks to each Settling Plaintiff and Settlement Class Member. Settling Plaintiffs and Settlement Class Members will have until the Check-Cashing Deadline, i.e., the date ninety (90) days after the date that Defendant delivers the Initial Settlement Checks to Plaintiffs' counsel, to cash their Initial Settlement Checks.

**4.9  Dismissal**.

**4.9.a** Mark Turner and Joseph Meyers will either voluntarily dismiss their claims without prejudice, or Defendant will request the Court dismiss their claims without prejudice because they do not satisfy the collective or class definition and their joinder has not been consented to by Defendant. Defendant's counsel will coordinate with Plaintiffs' counsel to ensure that Plaintiffs' counsel has the opportunity to first withdraw their representation before Defendant moves to dismiss, but Defendant will file such motions no later than the time the parties request final approval of the settlement.

**4.9.b** Within thirty (30) days of the final distribution of any Unclaimed Funds to the National Employment Law Project as *cy pres*, or at such earlier time as the Parties may agree, the Parties will jointly file a Stipulation of Dismissal, asking the Court to dismiss, <u>with prejudice</u>, the claims of all Settling Plaintiffs and all Settlement Class Members who

cashed their checks, and to dismiss, <u>without prejudice</u>, the claims of any Opt-Out Class Members, Rejecting Plaintiffs, and Settlement Class Members who did not cash their checks. The stipulation will list all Plaintiffs and indicate who did and did not cash their checks.

## 5. RELEASE OF CLAIMS

**5.1 Settling Plaintiffs**. By signing and timely returning the Notice of Settlement and Release, Settling Plaintiffs release and discharge Defendant, any of its predecessors, successors, past, present, and future subsidiaries and affiliates, and any and all of its and their past, present, and future officers, directors, shareholders, employees, and agents, from any and all federal and Minnesota state law wage claims that Settling Plaintiffs have, or may have brought, against Defendant from February 8, 2014, to November 30, 2016, including, but not limited to, overtime, minimum wage, travel time, recordkeeping, and hours of work.

**5.2 Settlement Class Members**. As a condition of the settlement, the Court's Order for Final Approval shall include a provision that all Settlement Class Members (including Non-Responding Plaintiffs) who cash their Initial Settlement Checks shall be deemed to have joined the existing Lawsuit and to have released and discharged Defendant, any of its predecessors, successors, past, present, and future subsidiaries and affiliates, and any and all of its and their past, present, and future officers, directors, shareholders, employees, and agents, from any and all federal and Minnesota state law wage claims that Settlement Class Members have, or may have brought, against Defendant from February 8, 2014, to November 30, 2016, including, but not limited to, overtime, minimum wage, travel time, recordkeeping, and hours worked. Those Settlement Class Members who do not cash their Initial Settlement Checks will not release their state or federal wage law claims.

**5.3 Settlement Checks Payable to Settlement Class Members**. The check(s) provided to Settlement Class Members in exchange for the release set forth herein and contemplated hereby will state on the back that, by cashing the check(s), the Settlement Class Member agrees to assert a claim under the FLSA (to the extent such a claim has not already expired under any applicable statute of limitations) by joining the existing Lawsuit and to consent to the release of any and all of his or her federal and Minnesota wage law claims in exchange for the consideration received.

## 6. CONFIDENTIALITY AND SEALING

**6.1** In signing and returning the Notice of Settlement and Release, Settling Plaintiffs agree not to disclose their Allocation of the Maximum Settlement Amount to anyone except for their attorneys, tax preparers, financial planners, spouses, partners, or close family members.

**6.2**     As reflected in <u>Exhibit D</u>, the Notice of Settlement and Release to Collective Members shall contain a confidentiality provision informing the Settling Plaintiffs of their obligation set forth in Section 6.1.

**6.3**     Unless otherwise directed by the Court, the parties shall follow the procedures set forth in Local Rule 5.6 to allow Defendant to file the Agreement and all of its exhibits under temporary seal in connection with Plaintiff's Motion for Preliminary Settlement Approval and Class Certification for Settlement Purposes.  Following the filing of the Plaintiff's Motion for Preliminary Settlement Approval and Class Certification for Settlement Purposes, Plaintiffs agree to the filing of a joint motion for continued sealing of the Agreement and the Motion for Preliminary Settlement Approval and Class Certification for Settlement Purposes as contemplated by Local Rule 5.6(d)(2), provided, however, that in connection with such motions, Plaintiffs will not support or oppose Defendant's request(s).  Defendant shall provide the first draft of the motion to Plaintiffs for review and edits.  Plaintiffs will provide Defendant with any edits within five (5) days after receipt of such drafts for additional review and edits by the Defendant.  The parties will work cooperatively thereafter to file such motions.

**6.4**     If the Court denies Defendant's request(s) to seal or redact portions of this Agreement or its exhibits, or the redactions in the Motion for Preliminary Settlement Approval and Class Certification for Settlement Purposes, the confidentiality provisions of this Agreement as to any information the Court determines should not be allowed to be filed under seal shall be null and void as to anything that becomes a matter of public record.

**6.5**     This provision does not apply to (1) Collective Members who do not ultimately become Settling Plaintiffs, (2) Settlement Class Members, (3) Opt-Out Class Members, or (4) Rejecting Plaintiffs.

**7.     OPTION TO RESCIND AGREEMENT**

Defendant has the right to rescind and withdraw from this Agreement if more than one Collective Member decides not to participate in the Agreement by the end of the Notice Response Deadline and becomes either a Non-Responding Plaintiff or a Rejecting Plaintiff.  Defendant may exercise its option by providing written notice to Plaintiffs' counsel within fourteen (14) days after Defendant's receipt from Plaintiff's counsel of the signed Notice of Settlement and Release documentation described in Section 4.2.d above.  This provision does not apply to Mark Turner or Joseph Meyers, who both parties agree after investigation do not satisfy the operative collective or class definitions.

**8.     ADDITIONAL AGREEMENTS**

**8.1     No Admission of Liability**.  By entering into this Agreement, Defendant does not admit to liability, and this Agreement and its exhibits, or any act performed in

14

furtherance of this settlement, may not be considered an admission of wrongdoing by or liability of the Defendant, and may not be used in any civil, criminal, or administrative proceeding as an admission or evidence of any fault or omission on the part of Defendant.

**8.2** **Enforceability of Settlement**. The Parties acknowledge and agree that this Agreement is entered into to settle a bona fide dispute concerning allegedly unpaid overtime wages, interest, liquidated damages, attorneys' fees and costs, and other liability under the FLSA and MFLSA, and is meant to be a full and final release of these claims and fully enforceable to the maximum extent permitted by law.

**9. MISCELLANEOUS**

**9.1** **Choice of Law**. Any dispute regarding the interpretation or validity or otherwise arising out of this Agreement, or relating to the Lawsuit or the release of claims described in Section 5 of this Agreement, shall be subject to the exclusive jurisdiction of the United States District Court for the District of Minnesota (the "Court") for the purpose of resolving any such dispute. The Court shall retain jurisdiction solely with respect to the interpretation, implementation, and enforcement of the terms of this Agreement and all orders and judgments entered in connection herewith, and the Parties and their counsel submit to the jurisdiction of the Court for the purposes of interpreting, implementing, and enforcing this Agreement and all orders and judgments entered in connection herewith.

**9.2** **Successors/Assigns**. This Agreement shall be binding upon and the benefits shall inure to the Defendant and its successors and assigns, as well as to each of the Settling Plaintiffs and his/her/their heirs and representatives.

**9.3** **Court Approval**. In the event the Court does not approve the settlement, the Agreement will be null and void, but the Parties shall work together in good faith to reach a mutually acceptable settlement, if possible.

**9.4** **Complete Agreement**. This Agreement and its amendments constitutes the entire agreement of the Parties concerning the subjects contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**9.5** **Multiple Originals**. This Agreement shall become effective upon its execution, subject to Court approval. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Parties had signed the same instrument. Any signature made and transmitted by facsimile for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the signing party.

**9.6  Authority**.  Each party hereto represents and warrants that he/she/they has/have full authority to bind the party represented.

**9.7  No Waiver**.  No waiver of any of the terms of this Agreement shall be valid unless in writing and signed by all Parties to this Agreement.  The waiver by any party hereto of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.

**9.8  Rules of Construction**.  No party shall be deemed the drafter of this Agreement, each party and their respective counsel shall be considered the drafter of the Agreement, and any ambiguities shall not be interpreted strictly against one party for the reason that such party drafted the Agreement.  The Parties agree that the terms of the Agreement are contractual and were the product of arms-length negotiation.

**9.9  Captions**.  Any section captions that appear on this document are not part of this Agreement and shall not be used in construing its terms.

**9.10  Severability**.  Should any provision of this Agreement be declared wholly or partially illegal, invalid, or unenforceable, the offending provision shall be stricken and all remaining provisions shall remain in full force and effect and shall be unaffected by such declaration.

**9.11  Return or Destruction of Documents Marked Confidential or Confidential—Attorneys' Eyes Only**.  Pursuant to the Court's June 7, 2017 Protective Order, within sixty (60) days of the dismissal of this Lawsuit, the Plaintiffs and their counsel, and Defendant and its counsel, shall return to the producing party or destroy all documents marked Confidential or Confidential—Attorneys' Eyes Only and notify the disclosing or producing party in writing that all such documents have been returned or destroyed; except that each party's counsel may retain a copy of any confidential document submitted to the Court and any communications generated in connection with this Lawsuit.

[*Space intentionally left blank*]

Dated: 8.2.18

_____
Lynn Melcher

Dated:

_____
Starkey Laboratories, Inc. d/b/a Starkey
Hearing Technologies

By:_____

Title:_____

Dated:                                        Dated:

_____                   _____
Lynn Melcher                                  Starkey Laboratories, Inc. d/b/a Starkey
                                              Hearing Technologies

                                              By: _Thomas W. Ting_
                                              Title: _General Counsel_